SCHWARTZ et al. v. GOIN.

(Supreme Court, Appellate Division, First Department. March 8, 1912.)

1. BILLS AND NOTES (§ 537*)—ACTION BY INDORSEE—KNOWLEDGE OF FRAUD—EVIDENCE—SUFFICIENCY.

In an action on a note by an indorsee thereof, evidence *held* sufficient to go to the jury on an issue whether plaintiffs participated in or knew of fraud practiced by the payee upon defendant maker.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1862–1894; Dec. Dig. § 537.*]

2. EVIDENCE (§ 594*)—UNCONTRADICTED EVIDENCE—CONCLUSIVENESS.

In an action on a note by an indorsee, testimony by plaintiff as to payment of consideration, though uncontradicted, was improperly *held* conclusive, where there was evidence by the maker as to plaintiff's par-

---

ticipation in the fraud by which the note was obtained, which, if believed, would thoroughly discredit him.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2431; Dec. Dig. § 594.*]

Appeal from Trial Term, New York County.

Action by Benjamin F. Schwartz and another, partners as Schwartz Bros., against Jeanette P. Goin. From a judgment for plaintiffs, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and MILLER, JJ.

Eugene N. Robinson, for appellant.
L. E. Warren, for respondents.

LAUGHLIN, J. [1] The plaintiffs have recovered on a promissory note made by the defendant on the 5th day of October, 1910, whereby she promised to pay to the order of one Samuel Rosenfield 60 days after date the sum of $2,500, with interest, which plaintiffs allege was indorsed and transferred to them for a good and valuable consideration before maturity. The answer admits the making of the note, but puts in issue the other allegations, and for separate defenses pleads, among other things, that the payee procured the execution of the note by falsely and fraudulently representing to defendant that he had for sale a rare edition, de luxe, of the works of Charles Dickens, on the purchase price of which he owed a balance of $8,000, and was being pressed for payment; that Mrs. C. P. Huntington, who was then absent from home, was ready, willing, and able to purchase the books at a price which would give him $13,000 profit, and he requested defendant to give him a check for $500, and two promissory notes to make up the balance of the $8,000, and as security he agreed to deposit the books in the safety vault of the Night and Day Bank, and, on the return of Mrs. Huntington, defendant was to deliver to him an order for the books on receipt of a certified check or cash for the indebtedness and $1,000 for the loan; that he did not intend to deposit the books, and did not so deposit them, and made the representations with a view to deceiving the defendant who relied thereon and executed the note; that defendant received no consideration for the note, and there was a total failure of consideration, and that plaintiff gave no consideration therefor, and received the note with knowledge of the facts and circumstances under which it was made, and has brought this action in the interests of the payee. On the trial the plaintiff Benjamin Schwartz testified that his firm was engaged in the jewelry business; that five days after the date of the note the payee requested plaintiffs to take it in exchange for diamonds, and plaintiffs sold to him diamonds of the value of $2,650, consisting of a pearl necklace, a pearl cluster scarf pin, a ring, and a brooch, and received in payment the note and $150 in cash; that he had been acquainted with the payee about four years, and had on several prior occasions sold him diamonds, and at times on credit; that, before tak-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ing the note, he investigated the credit of the maker through Brad-street's, and received a favorable report; that the payee informed him that the note was given for books which the payee sold to the defendant.

The testimony of defendant in her own behalf tends to show that the payee, whom she did not know, called upon her at her residence with a note signed by a Mrs. Huntington—the contents of it are not given—and represented that she would give $32,000 for the set of books, but that she was then absent, and, at his suggestion, defendant telephoned to Mrs. Huntington's house, and was informed that she would return in about 10 days, and that he further represented he could get the books from one Thomas for $8,000, and would give her one-half the profits if she "got in with him on this deal," and let him have her notes for $8,000, to be given to Thomas, and that the $8,000 could be paid by raising money on some People's Gas stock owned by his wife, and that then the notes would be returned to her; that he accompanied her to the Day and Night Bank, and, after consulting with the president or vice president about said gas stock, she told him that she could get the money, but that, as she did not know him, she would not give him the notes until he was identified; that he subse-quently brought to her house the plaintiff Benjamin Schwartz, who informed her that he was in the jewelry business and where his store was; and that he had known the payee a long time and had done busi-ness with him, and that "he is all right," and further said, "In fact, I am coming in this deal a little bit myself;" that she then told Schwartz that she was giving a check for $500 and two notes for the books, and that both of them said, "It would be perfectly all right. They were to be held; * * * given to Mr. Thomas and held until the People's Gas stock arrived, and I was to get that money to give to them and they were to give me back my notes"—that the payee and one Warfield, who stated he was private secretary to Thomas, called the next day, and stated that, if she would sign the notes, they would bring the books; that she did so, and the books were brought, and the next day they informed her that the books were too valuable to be left there, and she suggested that they be taken to the Night and Day Bank; that Schwartz said that he was a little interested in the transaction and knew the payee very well, and that she told him about the notes that she was going to give to be held until she got the money on the People's Gas stock, and then the money was to be given to Thomas for the books, and the notes to be returned to her. The de-fendant's daughter corroborated her with respect to part of the con-versation between herself, Schwartz, and the payee, and specifically on the point that he stated that he was interested in the deal. Schwartz denied that he called on the defendant with the payee. At the close of the evidence, the court directed a verdict for the plaintiffs for the amount of the note, and counsel for defendant duly excepted thereto.

I am of opinion that the case should have been submitted to the jury; for, if the jury believed the testimony of the defendant, the plaintiffs were not holders of the note in due course and in good faith, because one of them was interested with the payee in the transaction

with respect to the books, and had notice of the material facts and circumstances under which the note was given, and that it was not to be negotiated but was to be held by Thomas, and was to be returned to the defendant when the indebtedness to Thomas for the books was paid by the moneys, which, it was expected, would be raised or realized on the gas stock owned by the payee's wife. The defendant was not permitted to show that the books were not deposited at the bank in her name, but in the name of another and were withdrawn, and an exception was duly taken to the exclusion of the evidence. Although it was not shown that the representations made by the payee with respect to the books and Mrs. Huntington were not true, the evidence was sufficient to warrant the jury in finding that the note was not obtained for the purpose stated, and that the representations with respect to the use to be made of it were fraudulent, and that, if plaintiffs were not parties to the fraud, they, at least, had actual knowledge thereof.

[2] Moreover, Schwartz's testimony with respect to the consideration paid for the note was erroneously accepted as conclusive, for, although it is no longer the rule that the credibility of a party merely on account of his interest is for the jury (Second Nat. Bank v. Weston, 172 N. Y. 250, 64 N. E. 941; Gordon v. Ashley, 191 N. Y. 186, 83 N. E. 686), yet here, if the jury accepted the testimony of the defendant, they might well deem Schwartz unworthy of belief.

It follows, therefore, that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event. All concur.